UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., )<br><br>Plaintiff, )<br><br>vs. )<br><br>THE DAVEY TREE EXPERT COMPANY, *et al.*, )<br><br>Defendants. ) | CASE NO. 5:25-cv-707<br><br>CHIEF JUDGE SARA LIOI<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") brought this action against defendants The Davey Tree Expert Company ("Davey Tree") and Wolf Tree, Inc. ("Wolf Tree") (collectively, "defendants"). National Union is an insurance company that issued a commercial umbrella liability policy ("the Policy") to Davey Tree. (Doc. No. 21-1 (Commercial Umbrella Liability Policy).) National Union brought this action against defendants seeking: (i) declaratory judgment that National Union has no duty to defend or indemnify defendants under the Policy for claims brought against them in two underlying suits; (ii) declaratory judgment that National Union has no duty to indemnify or otherwise reimburse defendants under the Policy for liabilities incurred or may be incurred in the future in connection with the defense of or payments of any settlements or judgments against three Wolf Tree employees; (iii) declaratory judgment that no payments defendants have made, or liabilities incurred or may be incurred in the future, in connection with the underlying lawsuits erode the per occurrence and/or aggregate retained limit of the Policy; and (iv) reimbursement or recovery from

defendants for all payments to defendants to the extent the payments for fees, costs, and expenses are not covered under any duty to defend or indemnify under the Policy. (Doc. No. 21 (Complaint).) Now before the Court is defendants' motion asking the Court to decline jurisdiction over the declaratory judgment counts or, in the alternative, to stay the entire coverage action until the resolution of the underlying suits. (Doc. No. 22 (Motion).) For the reasons set forth below, the motion is **DENIED**.

**I.     BACKGROUND**

The underlying facts giving rise to this declaratory action involve the alleged murder of Wolf Tree employee Eliud Montoya ("Montoya"). Montoya was a Georgia-based employee of Davey Tree's wholly-owned subsidiary, Wolf Tree. (Doc. No. 21 ¶¶ 3, 22.) Montoya had worked for Wolf Tree as a tree trimmer and team leader for ten years, working with a crew of approximately thirty workers. (*Id.* ¶ 22.) Montoya's supervisor was Pablo Rangel ("Rangel"). (*Id.* ¶ 23.) Rangel allegedly supplied undocumented employees with falsified identification documents in exchange for money, skimmed money out of their paychecks, and traveled site to site with firearms to invoke fear among his workforce. (*Id.* ¶¶ 18, 20, 21.) Having witnessed Rangel's alleged violations of Georgia and federal law relating to the hiring of undocumented workers and the mistreatment of employees, Montoya reported these violations first internally to Davey Tree in April 2016 and again to both Davey Tree and the Georgia Department of Labor in 2017. (*Id.* ¶¶ 24, 25, 27).

It is claimed that, rather than conduct an internal investigation, Davey Tree General Counsel Majorie Conner ("Conner") forwarded Montoya's report to Wolf Tree area manager Christopher Branch ("Branch"). (*Id.* ¶¶ 26, 28.) Branch subsequently forwarded the report to Rangel. (*Id.* ¶ 28.) Rangel then allegedly shared Montoya's report among all Savannah-area Wolf Tree employees. (*Id.* ¶ 30.) Montoya, believing that Rangel's actions were threatening and

retaliatory, reported Rangel to Davey Tree. (*Id.* ¶ 31.) Rather than terminate Rangel, Davey Tree reassigned Montoya so that he was placed under the direct supervision of Oscar Cruz, Rangel's assistant. (*Id.* ¶¶ 19, 32.) Subsequently, it is claimed that Montoya was subjected to a variety of hostile actions by Cruz, including suspension from work. (*Id.* ¶¶ 32, 33, 35.) During his suspension, Montoya filed a formal complaint with the EEOC. (*Id.* ¶ 36.) EEOC personnel informed him that his employer would receive notice of his complaint upon filing. (*Id.*) On August 19, 2017, two days after filing his EEOC complaint, Montoya was allegedly murdered in front of his home. (*Id.* ¶ 37.)

At the time of Montoya's death, Davey Tree was insured with a commercial umbrella liability policy issued by National Union. (*Id.* ¶ 1; Doc. No. 23, at 2, 20.)[1] Davey Tree was also insured with an excess liability policy issued by XL Insurance America, Inc. (Doc. No. 23-8.)

Two legal actions followed: *Montoya* and *Huffman* (collectively, "underlying lawsuits"). The *Montoya* action was brought in Georgia state court on November 9, 2017, by the surviving spouse of Montoya against Davey Tree and Wolf Tree, among others, seeking compensatory damages, punitive damages, and attorney's fees. (Doc. No. 21 ¶¶ 12, 38; Doc. No. 23, at 5–6.) A similar action, *Huffman*, was brought by the administrator of Montoya's estate against the same defendants on July 3, 2018, also seeking compensatory damages, punitive damages, and attorney's fees. (Doc. No. 21 ¶¶ 13, 43; Doc. No. 23, at 6.) *Huffman* was subsequently removed to federal court on August 2, 2018. (Doc. No. 21 ¶ 14; Doc. No. 23, at 6.)

As of November 24, 2025, the *Montoya* and *Huffman* actions remain ongoing. The *Montoya* action went to trial and a judgment was entered on June 11, 2025, awarding compensatory

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

3

damages of $3.1 million and attorney's fees of $2,351,311.50 and apportioning fault 90 percent to defendants and 10 percent to Montoya. (Doc. No. 21 ¶ 40; Doc. No. 23, at 18.) The case is closed but there remain pending several post-judgment motions, with both parties having filed motions for judgment notwithstanding the verdict. (*See* Doc. No. 37, at 11.) As for the *Huffman* action, in March 2025, the court granted defendants' motion to dismiss counts pertaining to Georgia RICO, assault and battery, and the intentional infliction of emotional distress. (*See* Doc. No. 22-1, at 14.) The *Huffman* plaintiff is currently seeking a stay of discovery and reconsideration of the court's order dismissing the Georgia RICO claims in light of changes in the controlling law.

On April 8, 2025, insurer National Union filed its complaint against its insured Davey Tree, as well as Wolf Tree, Conner, Branch, and Cruz seeking declarations that National Union has no duty to defend or indemnify against the claims brought against defendants in *Montoya* and *Huffman* based on the terms of the Policy. (Doc. No. 1.) These terms provide for coverage of qualifying claims against the "Insured" if "the total applicable Retained Limit(s) have been exhausted by payment of Loss . . . and any applicable Other Insurance have been exhausted." (Doc. No. 21 ¶ 48.) "Insured" is defined by the Policy as the "Named Insured" as well as "employees, other than executive officers . . . but only for acts within the scope of their employment by [the Named Insured] or while performing duties related to the conduct of [the Named Insured's] business." (*Id.* ¶ 50.) The Policy includes exclusions for certain employment practices[2] and for bodily injuries and property damage expected or intended from the standpoint of the Insured. (*Id.* ¶ 53.) The Policy also includes several endorsements which modify the terms and conditions of

---

[2] Specifically, the Policy provides that "[t]his insurance does not apply to any liability arising out of: (1) failure to hire any prospective employee or any applicant for employment; (2) dismissal, discharge, or termination of an employee; (3) failure to promote or advance any employee; or (4) employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to: (a) coercion, harassment, humiliation or discrimination; (b) demotion, evaluation, reassignment, discipline, or retaliation; (c) libel, slander, humiliation, defamation, or invasion of privacy; or (d) violation of civil rights." (Doc. No. 21 ¶ 53.)

4

the insuring agreement. (*Id.* ¶ 54.) National Union asserts that it is not obligated to defend or indemnify defendants under the Policy because the injuries at issue in the tort actions were not caused by an "Occurrence" as defined in the Policy (*id.* ¶¶ 67–68, 77–78) and otherwise their claims are barred by one of the several Policy exclusions[3] (*id.* ¶¶ 69–76, 80–86).

On May 28, 2025, National Union and defendants moved to voluntarily dismiss defendants Conner, Branch, and Cruz. (Doc. No. 18.) The Court granted the motion. (Doc. No. 19.) On June 3, 2025, defendants moved to stay the action pending the resolution of the underlying *Montoya* and *Huffman* suits. (Doc. No. 22.)

## II.  LEGAL STANDARD

### A.  Jurisdiction Over Declaratory Claim

National Union has invoked this Court's jurisdiction under the Declaratory Judgment Act (Doc. No. 21 ¶ 11), which provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration," "[i]n a case of actual controversy within its jurisdiction[.]" 28 U.S.C. § 2201(a). Typically, "the granting of a declaratory judgment rests in the sound discretion of the court[.]" *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 325 (6th Cir. 1984) (citation and quotation marks omitted); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) (recognizing that "the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants").[4]

---

[3] National Union references the Employment Practices Exclusion, the Expected or Intended Injury Exclusion, and the exclusions listed in Endorsement No. 17.

[4] *Grand Trunk* sets forth a five-factor analysis to determine whether a district court should exercise jurisdiction over a declaratory judgment action. They are: "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly

This discretion is substantially limited when district courts are presented with "mixed actions" pairing a request for coercive relief (i.e. a claim for damages) with a request for declaratory relief. *Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 519, 527 (6th Cir. 2025). "If the district court has subject matter jurisdiction over a claim for coercive relief, the court must exercise jurisdiction over that claim unless a traditional abstention doctrine applies." *Id.* This is because, although the decision of whether to grant declaratory relief is discretionary, district courts have an "unflagging obligation to exercise jurisdiction over . . . coercive claim[s]." *Id.*; *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) (acknowledging "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"). By implication, "[w]hen a declaratory claim in a mixed action presents the same legal issue as the coercive claim over which the district court must exercise jurisdiction, these equitable considerations will counsel heavily in favor of not abstaining." *Fire-Dex*, 139 F.4th at 529 (citation omitted).

**B.     Stay of Proceedings**

The federal courts' inherent power to stay proceedings is well-established. *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). "There is no precise test in this Circuit for when a stay is appropriate[.]" *Ferrell v. Wyeth-Ayerst Lab'ys, Inc.*, No. 1:01-cv-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) (citation omitted). However, the Sixth Circuit has identified at least two factors district courts must consider under *Landis*: the balance

---

encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *Id.* at 326.

of hardships and judicial economy. *See F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 628 (6th Cir. 2014) (citation omitted). "[T]he burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the [stay]." *High 5 Sportswear, Inc. v. High 5 Gear, Inc.*, No. 3:15-cv-401, 2016 WL 4126468, at *2 (S.D. Ohio Aug. 3, 2016) (citing *Ohio Env't Council v. United States Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1997)).

### III. DISCUSSION

#### A. The Court's Jurisdiction Over Plaintiff's Declaratory Claim

Defendants ask this Court to decline jurisdiction over National Union's declaratory judgment claims pursuant to the factors articulated in *Grand Trunk*. (*See generally* Doc. No. 22-1.) Defendants assert that the *Grand Trunk* analysis weighs in favor of granting a stay of proceedings because: (i) a declaratory judgment would not settle the entire controversy and may result in inconsistent judgments; (ii) a declaratory judgment would likely confuse, rather than clarify, the legal relations at issue; (iii) proceeding with the declaratory claims would increase the friction between federal and state courts; and (iv) a declaratory judgment suit after the resolution of *Montoya* and *Huffman* is a more effective alternative remedy. (*Id.* at 8–9.) National Union counters by contending the opposite—that each of the *Grand Trunk* factors weigh against a stay of this matter. (Doc. No. 33, at 14.)

While the parties submit substantial briefing on the specifics of the *Grand Trunk* analysis, the Court's discretion as outlined in *Grand Trunk* is substantially more limited when, as here, the Court is confronted with "mixed actions" that involve both declaratory and coercive claims. *Fire-Dex*, 139 F.4th at 528. "If no traditional abstention doctrine applies to the coercive claim, the district court *must* exercise jurisdiction over that claim." *Id.* at 533 (emphasis added). Here the

7

presence of National Union's coercive claim[5] (i.e. its recoupment claim seeking damages) "significantly reduce[s] the district court's discretion to abstain from adjudicating the declaratory relief claim." *Id.* at 528. Therefore, the Court's guiding inquiry is not the *Grand Trunk* analysis but instead whether there exists a traditional abstention doctrine that advises against hearing National Union's recoupment claim. As explained below, the Court concludes no traditional abstention doctrines apply.

Of the traditional abstention doctrines, only *Colorado River* appears as if it could plausibly apply. But a closer look at the issues before the Court reveals that the Court cannot abstain on this basis. *Colorado River* permits a federal court to abstain from hearing a case when the federal action duplicates a pending state-court action and "exceptional circumstances" justify the federal court's refusal to hear the case. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–19, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). "A necessary requirement for application of this *Colorado River* doctrine, however, is the presence of a *parallel,* state proceeding." *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984) (emphasis in original). For actions to be parallel, there must be similarity in parties and issues; it is not enough for the state-court claims and federal court claims to merely arise out of the same factual scenario. *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994) (finding *Colorado River* abstention inappropriate because the plaintiffs and issues were different between the federal and state proceedings). Here, National Union is not a party in the underlying *Montoya* and *Huffman* actions. And, although all three actions fundamentally arise out of the same factual scenario of Montoya's alleged murder, here National Union is uniquely raising the issue of recoupment—an issue that is

---

[5] The Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1332 because each of the defendants is a citizen of a different state than National Union and the amount in controversy exceeds $75,000, exclusive of interest and costs. (Doc. No. 21, at 3.)

not being (nor could be) litigated in the underlying *Montoya* or *Huffman* actions. Because neither *Montoya* nor *Huffman* are parallel state proceedings, *Colorado River* abstention does not justify abstention by this Court as to National Union's recoupment claim. As such, the Court is obligated to exercise jurisdiction over National Union's recoupment claim. *See Generis Ent., LLC v. Donley*, No. 24-12661, 2025 WL 1982872, at *6 (E.D. Mich. July 8, 2025) (exercising jurisdiction over both plaintiff's coercive and declaratory claims because defendants had not established that any traditional abstention doctrine applies).

Because National Union's recoupment claim is tied to its declaratory claims, the Court must exercise jurisdiction over the declaratory claims as well. "[W]hen the coercive and declaratory claims in a mixed action are tightly linked, it would most likely be an abuse of discretion to abstain on the declaratory claims." *Fire-Dex*, 139 F.4th at 529. Here, National Union is seeking "reimbursement or recovery from [d]efendants for all payments made to [d]efendants under the Policy to the extent the payments were for fees, costs, and expenses not covered under any duty to defend or indemnify in the Policy." (Doc. No. 21, at 27.) This recoupment claim implicitly hinges on National Union's claims seeking "declaratory judgment against [d]efendants that it has no duty to defend or indemnify Davey Tree under the Policy[.]" (*Id.* at 15.) These claims are so tightly linked that it would make little sense for the Court to decide whether National Union is entitled to recoupment without first issuing declaratory judgment regarding the scope of the Policy. *See Fire-Dex*, 139 F.4th at 528–29 (recognizing that "when the coercive claim and the declaratory claim hinge on the same substantive legal issue or issues . . . . the declaration of rights and responsibilities will usually be a logical 'prerequisite' to the award of damages" (citing *Meredith v. City of Winter Haven*, 320 U.S. 228, 231, 64 S. Ct. 7, 88 L. Ed. 9 (1943))). Therefore,

9

the Court must exercise jurisdiction over National Union's recoupment claim and its declaratory claims.

### B. The Court's Inherent Authority to Stay Proceedings

In the alternative, defendants ask the Court to stay the entirety of this coverage suit under the Court's inherent power, as recognized by *Landis*, 299 U.S. 248 (1936). (Doc. No. 22-1, at 9.) The primary factors to consider in this analysis are the balance of hardships and judicial economy. *See E.M.A. Nationwide, Inc.*, 767 F.3d at 628.

Before continuing with this analysis, the Court acknowledges that there are two major issues at play in the declaratory judgment actions. They are: (i) whether National Union has a duty to defend defendants; and (ii) whether National Union has a duty to indemnify defendants. This distinction is important because, under Ohio law, "[a]n insurer's duty to defend is broader than and distinct from its duty to indemnify." *Ohio Govt. Risk Mgt. Plan v. Harrison*, 874 N.E.2d 1155, 1159 (Ohio 2007). "While a duty to defend arises if the allegations in the pleadings state a claim 'potentially and arguably' within the policy's coverage, the duty to indemnify, on the other hand, arises only if liability in fact exists under the policy." *Elevators Mut. Ins. Co. v. Scassa*, No. 3CA0045, 2004 WL 1463040, at *2 (Ohio App. Ct. June 30, 2004). In sum, the duty to defend can be determined as a matter of law. *See Preferred Risk Ins. Co. v. Gill*, 507 N.E.2d 1118, 1124 (Ohio 1987) ("[T]he duty to defend may arise solely from the allegations of the underlying complaint, regardless of the true facts as they are known to the insurer."). The duty to indemnify, however, may require resolution of the underlying facts. *See Chemstress Consultant Co., Inc. v. Cincinnati Ins. Co.*, 715 N.E.2d 208, 212 (Ohio App. Ct. 1998) ("The trial court could not make such a determination [on the duty to indemnify] without some proof of the actual facts underlying the Illinois plaintiffs' complaint."). Finally, it is well recognized that in the absence of a duty to defend,

there can be no duty to indemnify. *Ellis v. Skinner*, 218 N.E.3d 197, 205, (Ohio App. Ct. 2023); *OTARMA v. Miami Twp.*, 210 N.E.3d 665, 668 (Ohio App. Ct. 2023).

In light of the above, the Court's *Landis* analysis will solely assess the appropriateness of a stay as it relates to the duty to defend. This is because the duty to defend is a natural prerequisite to the duty to indemnify. *See id.* It follows that the Court must first determine that there is a duty to defend before it reaches the issue of the duty to indemnify. If Court finds that there is no duty to defend, then by implication there is no duty to indemnify, and the Court can give declaratory judgment to that effect. If, on the other hand, the Court finds a duty to defend, then it may proceed to assessing whether there is a duty to indemnify.

It would be premature to grant a stay as to the duty to indemnify at this moment because the duty to indemnify is implicated only if the Court first finds the existence of a duty to defend. Therefore, the *Landis* analysis will focus exclusively on the question of whether the Court should stay National Union's declaratory judgment action as it relates to the duty to defend.[6] After considering the balance of hardships and judicial economy, the Court concludes that a stay is inappropriate.

    1.    Balance of Hardships

"The balance of hardships," also known as prejudice, is "[t]he most important consideration" under *Landis*. *See Int'l Bhd. of Elec. Workers, Loc. Union No. 2020, AFL-CIO v. AT&T Network Sys. (Columbia Works)*, 879 F.2d 864 (6th Cir. 1989) (unpublished). The proponent of the stay "must make out a clear case of hardship or inequity in being required to go forward, if

---

[6] The Court notes that a denial of a stay here does not preclude the parties from requesting a stay at a later stage in the proceedings. Although the Court believes that granting a stay as it relates to the duty to indemnify claim would be premature at this juncture, the Court recognizes that this issue may be more appropriately raised later should the Court find that there is a duty to defend.

11

there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255. Defendants fail to meet their burden.

National Union has demonstrated that it would be prejudiced if these proceedings were stayed. First, National Union "has a right to a determination of its rights and liabilities without undue delay." *Ohio Env't Council*, 565 F.2d at 396. A stay of these proceedings would prejudice this right. *See Acceptance Indem. Ins. Co. v. Shepard*, No. 19-cv-12777, 2021 WL 1087416, at *6 (E.D. Mich. Mar. 22, 2021) ("The resulting prejudice [of a stay] to [p]laintiff, a party entitled to a determination of its claims without undue delay . . . is apparent." (internal citation omitted)).

Next, National Union argues that a stay would prejudice it by forcing it to continue to fund a defense it may have no duty to fund and further delay it from recouping monies it has already expended in providing a defense.[7] (Doc. No. 33, at 27.) Defendants retort that National Union will suffer no prejudice because National Union is not currently funding Davey Tree's defense in the underlying *Montoya* and *Huffman* matters. (Doc. No. 37, at 13–14.) But the question of whether National Union is currently funding Davey Tree's defense is immaterial. Regardless of whether National Union is funding the defense, if a stay is granted, National Union will be placed in a difficult position. District courts recognize that:

> [A]bsent a declaratory judgment, an insurance company has only two options, neither extremely palatable[]. First, the insurance company could deny coverage, opening itself up to a breach of contract claim. [] Second, the insurance company could "provide a defense and await the resolution of the action in state court ... [and] seek recovery of attorney's fees in the event that it was concluded that the conduct could not be covered.

*Fed. Ins. Co. v. Cintas Corp.*, No. 1:04-cv-697, 2005 WL 8161542, at *6 (S.D. Ohio Nov. 15, 2005) (citing *Britamco Underwriters, Inc. v. Stone*, No. 91-cv-4691, 1992 WL 38131, at *3 (E.D.

---

[7] National Union represents that it has already reimbursed defendants for millions of dollars in defense costs. (Doc. No. 33, at 8.)

12

Pa. Feb. 21, 1992)). National Union will thus be prejudiced if these proceedings were stayed. Because a stay would "work damage to someone else[,]" namely, National Union, defendants must now "make out a clear case of hardship or inequity[.]" *Landis*, 299 U.S. at 255.

Defendants urge that they will be prejudiced without a stay. (Doc. No. 22-1, at 25–26.) Specifically, defendants argue that the plaintiffs in the underlying *Montoya* and *Huffman* actions may be monitoring this dispute and may attempt to use National Union's arguments against them in the underlying suits, "possibly including efforts to restore the dismissed intent-based claims against Davey." (*Id.* at 26.) Defendants further argue that any decision on National Union's intent-based coverage exclusions could risk inconsistency with the underlying suits and "further embolden the underlying plaintiffs, to Davey's prejudice." (Doc. No. 22-1, at 26.)

Defendants fail to make out a clear case of hardship. First, the Court is unconvinced that issuing declaratory judgment in this case will motivate plaintiffs in the underlying *Montoya* and *Huffman* actions to reinstate dismissed claims against Davey Tree, especially considering the procedural postures of those cases.[8] Second, the Court believes the issues in this action can be resolved as a matter of law based on the underlying pleadings without resort to any factual issues present in *Montoya* and *Huffman*. The issue at hand is an independent legal issue, namely, to interpret the terms of the Policy to ascertain the scope of National Union's liability based on the facts alleged in the underlying action. In making this assessment, the Court can refrain from making determinations on the factual issues pending in the underlying litigation. In other words, the Court may interpret coverage under the terms of the Policy without necessarily determining

---

[8] The *Montoya* action has already gone to trial and thus it is unlikely that the underlying *Montoya* plaintiff will be able to restore the dismissed intent-claim against Davey. (*See* Doc. No. 21 ¶ 40.) The *Huffman* action has been pending for over seven years and the Southern District of Georgia judge has already dismissed several of the *Huffman* plaintiff's initial claims. (Doc. No. 22-1, at 14; Doc. No. 21-4 (*Huffman* Complaint).) It seems unlikely that the *Huffman* plaintiff will be able to restore his claims either.

13

whether Davey Tree is *actually* liable to the plaintiffs in the underlying actions under the doctrine of *respondeat superior* or whether Davey Tree *actually* expected or intended the injury. The Court instead is tasked with making a narrow assessment of coverage based on the language of the Policy and the pleadings of the underlying actions. *See Preferred Risk Ins. Co.*, 507 N.E.2d at 1124. The ultimate resolution of the underlying factual issues is to be decided by the courts where *Montoya* and *Huffman* remain pending. It is thus unclear how any determination or argument made in this action could be useful to the underlying plaintiffs or be inconsistent with determinations in the underlying action. *See Amguard Ins. Co. v. Optima Funeral Home, Inc.*, No. 22-cv-4179, 2022 WL 18142556, at *7 (C.D. Cal. Nov. 29, 2022) (denying defendants stay where "[d]efendants have not pointed to a single specific overlapping fact that if decided by this [c]ourt could prejudice them in the [u]nderlying [a]ction"). Therefore, the balance of hardship thus weighs against a stay.

    2. *Judicial Economy*

Relevant to judicial economy "is the question of whether a separate suit in another jurisdiction involves the same issues and parties and is likely to consider adequately all interests before the court considering a stay." *Int'l Bhd. of Elec. Workers, Loc. Union No. 2020, AFL-CIO*, 879 F.2d at 864. Judicial economy will typically weigh in favor of a stay where resolution of a related action could clarify or simplify the issues in the action to be stayed. *See, e.g., Med. Protective Co. v. Durrani*, No. 1:22-cv-122, 2023 WL 4182122, at *4 (S.D. Ohio June 26, 2023) (concluding that judicial economy weighed in favor of stay where related suit could clarify or simplify issues in present suit). Relatedly, "[n]umerous courts . . . have held that the risk of inconsistent decisions is a significant factor" in this analysis. *See Ramcharitar v. Procter & Gamble Co.*, No. 1:15-cv-457, 2016 WL 796129, at *2 (S.D. Ohio Mar. 1, 2016).

Defendants argue that a stay would serve judicial economy because the outcomes in *Montoya* and *Huffman* could moot or at least narrow the issues in this suit. (Doc. No. 22, at 27; Doc. No. 37, at 14.) National Union argues that a stay would not serve judicial economy because the present suit shares no common issues with the *Montoya* and *Huffman* cases. (Doc. No. 33, at 29.)

The present action raises independent legal issues, separate and distinct from the issues raised in the *Montoya* and *Huffman* actions. The *Montoya* and *Huffman* decisions thus have little chance of clarifying or limiting the issues in this matter or producing inconsistent decisions. A stay of these proceedings would not serve judicial economy. *See Fed. Ins. Co.*, 2005 WL 8161542, at *6 (concluding that judicial economy weighed against stay where "the issues to be determined in this declaratory judgment action are not issues that need be addressed in the [underlying] [a]ction."). Here, as in *Fed. Ins. Co.*, "[j]udicial economy is better served by determining the party ultimately liable for any judgment . . . now rather than later." *Id.*

\*\*\*

Both the balance of hardships and judicial economy weigh against staying these proceedings. Resultantly, the Court will not stay these proceedings pursuant to its inherent authority.

**IV. CONCLUSION**

Because this case implicates both coercive and declaratory claims and there is no traditional abstention doctrine applicable to National Union's recoupment claim, the Court is without discretion to refuse to hear the declaratory claims. Consequently, the Court will exercise jurisdiction as to National Union's declaratory claims. Furthermore, the balance of hardships and

15

judicial economy do not justify invoking the Court's inherent authority under *Landis* to stay the proceedings. For the foregoing reasons, defendants' motion to stay is **DENIED**.

**IT IS SO ORDERED**.

Dated: November 24, 2025

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**